IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

GENTEX CORPORATION
324 N. Main St
Carbondale, Pennsylvania 18407,

       Plaintiff,

    v.

NEIL PLOTKIN, an individual
2900 Sedgefield Court
Fallston, Maryland, 21047

       and

AVON PROTECTION SYSTEMS, INC.
8140 Corporate Dr., Suite 300
Baltimore, Maryland 21236,

       Defendants.

Civil Action No.

**VERIFIED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF**

NOW COMES Plaintiff Gentex Corporation ("Gentex") by undersigned counsel, as and

for its complaint against Defendants Neil Plotkin ("Plotkin") and Avon Protection Systems, Inc.

("Avon") alleges as follows:

**NATURE OF ACTION**

1.     Gentex brings this action to enforce the non-disclosure and non-competition terms

of its employment agreement with a departing senior leadership team member who is planning to

bring his Gentex-specific knowledge and experience to Gentex's largest and most direct

competitor.

2.     Gentex is a defense contractor.  It manufactures head-worn personal protection

integrated helmet systems and accessories, including ballistic helmets and riot helmets ("Helmet Systems"), and chemical, biological, radiological, nuclear ("CBRN") respiratory personal protection equipment ("PPE") and a number of other protective gear product lines for the United States and international militaries, national security, first responders, and other governmental and non-governmental customers.

3.      The industry that engages in this development work and manufactures this type of headborne and CBRN equipment is small.  Only a handful of companies compete for a limited number of contracts and development programs with United States defense agencies, international defense agencies, and commercial customers.  Of that handful, the most significant manufacturers in this segment historically have been Avon, Gentex, and its direct competitor Ceradyne, followed by the next largest competitors, Team Wendy and Galvion.  In the ballistic helmet segment, Gentex and Ceradyne have consistently been the two largest.  Since Avon's acquisition of Ceradyne in 2019, Avon has been Gentex's largest and most direct competitor.

4.      On September 22, 2014, Defendant Plotkin began employment with Gentex as a Director of Programs.  Plotkin's employment and his access to Gentex's sensitive competitive information were both expressly conditioned on his agreement to protect the confidentiality of the information to which he was exposed, and to refrain from accepting employment with a direct competitor for the first 12 months after his separation from Gentex.

5.      On August 17, 2020, Plotkin notified Gentex that he was resigning his position with Gentex for the purpose of accepting a competitive position with Avon as Vice President, Program Management.  At the time, Plotkin intended to begin employment on Monday, August 31, 2020.

6.      During the period in which he was talking with Avon about potential employment, Plotkin secretly downloaded hundreds of proprietary files from Gentex's servers and transferred

them to external thumb drives stored in his home. Plotkin did not disclose his copying at the time and did not volunteer the information upon notice of departure. To the contrary, Plotkin took steps to conceal from Gentex that he had copied some of the most sensitive information anywhere in the company.

7. Gentex brings this action against Plotkin for breaching his employment agreement, and against both defendants for misappropriating trade secrets, and unfair competition. Gentex also brings an action against Avon for tortious interference, and seeks a declaratory judgment regarding its rights to its own confidential and proprietary information.

## PARTIES

8. Plaintiff Gentex is a privately held corporation organized and existing under the laws of Delaware. Gentex has its principal address at 324 N Main Street, Carbondale, Pennsylvania 18407.

9. Defendant Plotkin is an individual residing in the city of Fallston (Harford County), Maryland.

10. Defendant Avon is a corporation organized under the laws of Michigan with its principal address at 503 Eighth Street, Cadillac, MI 49601. Avon is a wholly owned subsidiary of Avon Rubber, p.l.c., a British corporation. Avon maintains a business office in White Marsh (Baltimore County), Maryland.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over Gentex's claims pursuant 28 U.S.C. § 1332 because Defendants are citizens of different states than Gentex, and the amount in controversy exceeds $75,000.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(c) because Defendant

Plotkin resides within this judicial district, and a significant portion of the causes of action arose in this judicial district.

## NATURE OF THE COMPETITIVE INDUSTRY
## FOR GENTEX AND AVON

13.    The highly specialized industry in which Gentex and Avon operate comprises only a handful of manufacturers.  These manufacturers compete for contracts and development funds related to Helmet Systems and CBRN PPE, among other important areas.  For an overview of the industry, see the Department of Defense FY 2019 Industrial Capabilities Report to Congress (June 30, 2020), attached hereto as Exhibit A (including CBRN at 56-57, and Soldier Systems at 84-87).

14.    Among those manufacturers are the leading competitors Gentex and Avon.  Other market participants also manufacture ballistic helmets and CBRN PPE (Team Wendy, Galvion, and Armor Source for ballistic helmets; Scott, Draeger, AVOX, and Air Boss for CBRN PPE. *See*, *e.g.*, selected press reflecting Avon/Gentex competitive relationship, attached hereto as Exhibit B.

15.    Avon and Gentex were not always in direct competition to the extent they are today. However in 2019, Avon acquired one of Gentex's largest direct competitors in the Helmet Systems area—Ceradyne—from non-party 3M, thereby becoming Gentex's most significant direct rival in that segment.

16.    The market for contracts in this industry is limited, and Gentex and Avon are now often in direct competition for a limited number of production and research and development ("R&D") contracts with government defense agencies.

17.    The limited number and type of customer for these classes of product and development program mean that the market is static by nature; for one manufacturer to gain market share, another manufacturer must lose it.  Accordingly, some of the most valuable intellectual property is each manufacturer's development plan and operations effectiveness for unseating,

replacing, or out-bidding its competition on future products and technologies.

18.   In this line of work, the U.S. government, specifically the Department of Defense ("DoD") and other agencies, generate requests for proposals ("RFPs") for "programs," which may include products, technologies, or development initiatives.

19.   The RFPs for which Avon and Gentex compete include production contracts to manufacture and ship specified quantities of equipment ("Production Programs"), and development programs to research particular issues to identify a solution ("R&D" programs).

20.   The RFPs are highly competitive among the few manufacturers that operate in the industry.

21.   Programs typically run a multi-year horizon, often not getting even to the RFP stage until several years of customer relationship development and iterative consulting.

22.   The details of the contracts awarded to Gentex and Avon are generally confidential, and only extremely limited information is public knowledge and/or available via a Freedom of Information Act ("FOIA") request.  That public knowledge includes the identity of the particular contract awarded to a given manufacturer, total contract value, the number of units the government has procured, and the contract's period of performance. This information is available via contract award announcements.

23.   The detailed and far more sensitive information regarding Gentex's products, strategies, and development efforts is known only to Gentex employees, and is carefully guarded. That information includes, but is not limited to, obstacles Gentex may have encountered developing a product and how it solved them, its cost structure, key suppliers, specific costs, design elements and material specifications, identified deficiencies, identified strengths, production timelines, and business operations and other highly sensitive proprietary information.  Key among

this proprietary information are the design and technology elements being developed at any given time for the next generation of product or initiative in a given class.

24.     Preparing a response to a government RFP requires months of extraordinary effort, teamwork, and institutional knowledge regarding Gentex's strengths, weaknesses, vendors, cost constraints, and the capabilities of its personnel.

25.     Knowledge of this detailed information would provide a significant competitive advantage to others bidding against Gentex for the contracts resulting from the RFPs, or to others attempting to protect existing contracts or awards against competition from Gentex.

26.     Gentex operates within a number of technology-product areas, including Integrated Helmet Systems, CBRN/Respiratory, Tactical Optics and Situational Awareness/Communications, as well as the enterprise-level market sector for Air, Ground and Industrial Safety.

27.     In particular, Gentex is in direct competition with Avon in the Air, Ground and Industrial market sectors, and Gentex often overlaps with Avon in CBRN/Respiratory and Helmets product areas.

28.     In the CBRN/Respiratory market sector, Avon and Gentex compete for production contracts for Chemical-Biological (CB) protective mask-hood respirators for aircrew use in DoD and international military Fixed Wing Aircraft. These contracts are known as the Joint Services Aircrew Mask (JSAM) contracts.  While Gentex has the Joint Strike Fighter JSAM contract, Avon has the Strategic Aircraft JSAM contract.

29.     Gentex and Avon are current and future competitors for Ground Operator CB Respirator contracts and development programs in the Ground Warfighter/Tactical User market segment.

30.     In the Escape & Protective Mask product area, Avon currently holds a major U.S. military contract and, upon information and belief, is currently working to develop its next-generation offerings in the same area.  Gentex is currently developing its own next-generation competitive products in this area, and currently holds US Department of Defense contracts with U.S. Army Futures Command for development of those pre-market products.

31.     Gentex and Avon also have competitive products for the Industrial Safety market for Industrial Safety Respirators.

32.     In the Helmet Systems market sector, Avon is now the primary competitor to Gentex for integrated ground helmet systems, including the Next Generation Integrated Head Protection System (IHPS) contracts, Advanced Combat Helmet (ACH) Gen II, first responder and federal, state and local law enforcement contracts, among other international programs since Avon's acquisition of the Ceradyne, Inc. subsidiary from 3M in January 2020.  (*See*, *e.g.*, Exhibit C at 10, contrasting existing Avon helmet with next-gen Gentex helmet). Another significant competitor in this segment is Team Wendy.

33.     Within the Helmet market sector, Gentex and Avon are competitors for Ground Operator Helmet & Helmet System contracts and other business opportunities in Ground Warfighter/Tactical User market segments.

**PLOTKIN'S ACCESS TO
SENSITIVE GENTEX INFORMATION**

**A.  Plotkin's Roles with Gentex**

34.     Plotkin began his employment with Gentex on September 22, 2014 as the Director of Program Management.  The role of a program manager is to navigate the federal government contracting process and program management contract execution for the business line at issue along with the program management capability and resources to support these activities.

Familiarity with the government contracting process is the key qualification for a program manager or program management leadership job, whether at Gentex or any of the hundreds of government contractors in the DC-MD region. Before beginning employment with Gentex, Plotkin worked for a defense contractor in an industry that did not manufacture integrated helmets system and CBRN PPE, but because Plotkin had experience with government contracting, he was qualified for his position as the Director of Program Management for Gentex.

35.     Plotkin did not have specialized knowledge of the integrated helmet system and CBRN PPE industry before starting his employment with Gentex.

36.     In his role as Director of Program Management, Plotkin was initially responsible for managing Gentex's Production and R&D Programs for Gentex's Carbondale, Pennsylvania facility and then eventually became responsible for managing Gentex's Production and R&D Programs across all four of its U.S. locations. Plotkin also served as value stream lead and managed the engineering and production operations including program management in California on an interim basis.

37.     Like program managers at other defense contractors, program managers at Gentex are responsible for knowing everything about Gentex's Production and R&D Programs, including each Program's customer needs and projections, supply chain issues, technical strengths and weaknesses of the company's approach, and creative and design considerations.

38.     On October 2, 2018 Plotkin was promoted to the Director of Global Projects.

39.     As Director of Global Projects, Plotkin oversaw enterprise-wide special projects and initiatives for Gentex's contracts around the globe.

40.     On June 17, 2019 Plotkin was promoted to his most recent role of Senior Director, Enterprise Supply Chain.

41.     As Senior Director, Enterprise Supply Chain, Plotkin was responsible for all sourcing (acquiring all supplies, materials, and equipment) Gentex needed to support its ongoing Production and R&D programs and all planning activities and Business Intelligence for operations on a global basis.   He had global oversight over six of Gentex's proprietary work streams, including Major Subcontracts, Strategic Sourcing and Commodities, Supplier Quality Engineering, Sales, Inventory & Operations Planning, Business Intelligence, and International Offsets.

42.     Each of Plotkin's three roles during his employment at Gentex involved detailed activity in the product and technology areas of Integrated Helmet Systems, CBRN/Respiratory, Optics and Situational Awareness/Communications across the enterprise-level Air, Ground and Industrial Safety market sectors.

43.     As a direct report to the chief operating officer/chief technology officer, Plotkin has been included among the senior management team that met formally on a quarterly basis and frequently on a daily or weekly basis as needed with the CEO, other Gentex executives, and the senior management team to discuss all ongoing projects, strategic plans, development initiatives, and the most sensitive topics of the day.

44.     During his employment with Gentex, Plotkin had broad and unfettered access to technical data, layouts, machines, processes, designs, products, concepts, equipment, special tools, works in process, prioritization, market and competitive analysis, proposals, contracts, business strategies, financial information, and other proprietary and confidential information that belongs to Gentex, is carefully protected, and to which his access had been expressly conditioned on his agreement to dutifully guard against potential use by a direct competitor like Avon.

45.     During his employment with Gentex, Plotkin was directly responsible for execution

of all CBRN/Respiratory activities including but not limited to the JSAM contracts and the contracts/orders involving products like the M52 and SOTR for which Gentex and Avon compete. During his employment with Gentex, Plotkin was directly responsible for execution of all integrated helmet systems activities, including but not limited to all ballistic helmet contracts and riot helmet contracts, such as ACH Gen II, NG IHPS, FTHS, ECH, and federal, state and local law enforcement and first responder contracts for which Gentex and Avon compete.

46.     Plotkin was responsible for coordinating, integrating, and publishing numerous proposals in response to the government's RFPs. While developing proposals, Plotkin was involved in assessing product configurations and concepts, and developing supply chain options as well support/leadership for production operations activities.

47.     In particular, Plotkin was aware of and supported the execution of two production and development contracts referenced above, for next-generation products directly competitive with Avon in the Escape and Protective Mask segment.

48.     The foregoing access to Gentex's most sensitive information and detailed knowledge of Gentex's ongoing development and innovation efforts would be invaluable to a competitor like Avon.  While many government contractors employ program managers and leaders of the program management discipline, the unique value of Plotkin is that his experience is guided by Gentex's own priorities, challenges, innovations, and solutions.  Only Avon or another direct competitor like Team Wendy would value Plotkin's experience significantly above the market rate for program managers and program management leaders generally—and for the specific reason that his knowledge and experience reflects the internal judgments and strategies of Avon's direct competitor.

49.     In August 2019, Avon attempted to recruit a senior-level Gentex employee other

than Plotkin, but was rebuffed by that Gentex employee for the explicit reason that Avon is a direct competitor subject to mandatory non-compete obligations.  In January 2020, Avon approached Plotkin about leaving Gentex for a competitive position at Avon.

50.     Since February 2020, with the impact of COVID-19 in the United States, Plotkin has been intimately involved in many key aspects of Gentex's Industrial Respiratory business, including capacity expansion, new product development, product improvements, supply chain, and production.  Gentex's Industrial Respiratory business—part of the CBRN product area—has doubled in the past year, and continues to grow.  While the Helmet Systems area is responsible for the largest portion of Gentex's current revenues, the CBRN/Respiratory portion of Gentex's business is the second-highest contributor to Gentex's revenue and is home to a significant amount of the development work presently underway, and reflects years of research, design, and innovation with plans for product releases in both the near and more distant future.

51.     Had Gentex known that Plotkin was actively considering employment with Avon during this period, it would not have enabled him to continue to access this sensitive information.

52.     In February 2020, Plotkin selected and downloaded more than 200 files from Gentex's systems and saved them on personal thumb drives that he did not disclose to Gentex after he had been approached by Avon to leave Gentex.  Plotkin thereafter transferred batches of documents from his Gentex laptop to thumb drives during the period that he was in discussions with Avon.

53.     Throughout this period—indeed, since June 17, 2019—Plotkin has had the option of working remotely from his home, and has frequently and consistently exercised that option. Since March 19, 2020 during the pandemic, Plotkin has worked exclusively from his home in Fallston, Maryland.

**B. Plotkin's Knowledge of Gentex Protected Information**

54. Plotkin possesses critical product information including polyethylene material selection, optimization, and pricing—the primary driver of ballistic product performance—from two critical vendors common to both Gentex and Avon.

55. Plotkin also has knowledge of Gentex's critical next generation helmet system suppliers, including sole source suppliers with the only products and system components that will enable Gentex to meet performance requirements for its ballistic helmet, CBRN and Industrial Respirator PPE businesses.

56. Plotkin also has knowledge of Gentex's product design and corresponding performance, design optimization, trade space choices, proprietary critical manufacturing processes, prioritization, and cost information and pricing strategies for Gentex's competitive, cutting edge, next-generation integrated helmet systems and helmets, CBRN PPE and Industrial Respirator businesses.

57. Plotkin's role exposed him to everything about Gentex's strategy and execution plan to win the competition between Avon and Gentex to achieve the next significant step change in ballistic and integrated helmet system performance. This information is critical to the future of Gentex's ballistics and Integrated Helmet and CBRN business in the military and commercial markets.

58. In one such strategy document, prepared in January 2020, Gentex laid out its entire enterprise strategy, reflecting Gentex's most sensitive strategic plans, development initiatives, financial data, and product and personnel issues. Plotkin was directly involved in the discussions surrounding preparation and implementation of this strategy but did not separately download the document to his personal files at the time. Rather, two months later—after he was in talks with

Avon about taking a position there—Plotkin went back and selected this particular file to download to his personal thumb drive.

59.     Plotkin also had access to the detailed product performance, product configuration and pricing advantages of Gentex's high performance ballistic helmet products under contract with the US Department of defense, which could be useful for competition on the future Integrated Head Protection Systems (IHPS) contracts. Plotkin also had access to the detailed product performance, product configuration and pricing advantages of Gentex's ACH Gen II proposal.

60.     Plotkin's intimate involvement in many key aspects of Gentex's Industrial Respiratory business (including capacity expansion, new product development, product improvements, supply chain, and production) is directly related to the significant growth Gentex has enjoyed in that area.  Plotkin knows all about the development work presently underway, which reflects years of research, design, and innovation—planned to result in product releases directly competitive to Avon in the CBRN and Integrated Helmet Respirator (IHR—a CBRN product for effective Helmet Systems integration) areas.

61.     All of the foregoing constitutes not only information available to Plotkin, but knowledge and familiarity that he simply cannot "un-know."

62.     During the period leading up to his resignation, Plotkin was working on numerous bids and proposals for which Avon is a direct competitor and will be submitting its own bids and proposals.

**C.  Plotkin's NDA**

63.     When Plotkin agreed to join Gentex on September 22, 2014, as a condition of his employment, Gentex and Plotkin entered into the Employee's Agreement for the Protection of Proprietary Information and the Assignment of Inventions (the "Contract"), a true and correct copy

of which is attached hereto as Exhibit D.

64.     Section III of the Contract included a Non-Disclosure Agreement (the "NDA"). Under the NDA, Plotkin agreed to "maintain in confidence and secrecy all knowledge of the technical data, layouts, machines, processes, designs, products, concepts, equipment, special tools, work in process, business strategies, financial information and other such information acquired while in employment with the Company, its successors and assigns, its personnel or its facilities," unless that information is public or was previously and rightfully known to Plotkin before his employment.

65.     Under Section IV of the Contract, Plotkin agreed and acknowledged that Gentex's "business is built upon [Gentex's] proprietary information and the confidence of its customers and that all goodwill arising out of [Plotkin's] acquaintances with customers shall be the sole and exclusive property of [Gentex]."

66.     The Contract included these clauses in part because the highly competitive nature of the RFPs to which Gentex responds makes Gentex's proprietary and confidential information, as well as customer relationships paramount to its success winning government contracts.

67.     Plotkin also agreed and acknowledged that Gentex "would suffer irreparable injury if [Plotkin] solicit[s] representatives, contractors, employees, suppliers or consultants of the [Gentex], divert business from the [Gentex], or solicit[s] or accept[s] business from clients, customers, or vendors of [Gentex]."

68.     Section IV of the Contract also contained a restrictive covenant (the "Restrictive Covenant") directly implicated here.

69.     Plotkin agreed that he would not, "within 12 months following the date of [his] termination or Cessation of employment with the Company, for any reason whatsoever . . . directly

or indirectly, operate, organize, maintain, establish, manage, own, participate in, or in any manner whatsoever, individually or through any corporation, firm or organization of which [he] shall be affiliated in any manner whatsoever, have any interest in, whether as owner, operator, partner, stockholder, director, trustee, officer, lender, representative, employee, principal, agent, consultant or otherwise, any other business or venture anywhere, that is in direct competition with the Company or the Company's business, unless such activity shall have been previously agreed to in writing by the Company or its successors and assigns."

70. The Restrictive Covenant prohibits Plotkin from employment with a direct competitor manufacturer of CBRN PPE or integrated helmet systems/helmets for one year after ending his employment with Gentex.

71. The one-year timeline is crucial because at any point within a twelve-month period, Gentex may be working to respond to an RFP for which it is in direct competition with another CBRN PPE or integrated helmet systems/helmets manufacturer such as Avon.

72. An employee leaving Gentex for employment with a competitor while a response to an RFP is pending would be detrimental to Gentex's business because that employee would take with him proprietary and confidential information critical to a successful RFP bid.

73. The Contract does not prevent Plotkin from employment with any of the hundreds of other defense contractors in a segment or sector other than those in which Gentex and Avon are most active—here, Helmet Systems/Helmets or CBRN PPE.

**D. Plotkin's Threatened Employment with Avon**

74. On August 17, 2020, Plotkin notified Gentex that he was resigning his position at Gentex effective August 30, 2020.

75. Plotkin's resignation from Gentex creates an imminent risk to the success of

Gentex's current RFP bids and proposal efforts—many of which Avon is likely responding to as well—as Plotkin will take with him an extraordinary amount of institutional knowledge when he departs, including knowledge specifically about the bids on which he was working for Gentex and necessarily will be handling in his role as a program management vice president for Avon.

76. Plotkin intended to begin employment with Avon on August 31, 2020 as "Vice President of Program Management – Military" with a starting salary reflecting a substantial premium over the market compensation for an employee at Plotkin's level. Avon has since pushed back Plotkin's start date to September 17, 2020, while evaluating the implications of Plotkin's NDA and related conduct.

77. Plotkin's salary at Gentex was representative of the average compensation received by employees of Plotkin's position and experience in the CBRN PPE and integrated helmet system industry.

78. When Gentex learned of Plotkin's intention to leave Gentex and begin employment with Avon, Gentex offered to meet Avon's compensation package, but Plotkin declined.

79. Plotkin intends to begin employment with Avon despite the ability to work remotely for Gentex, and Gentex's offer to meet Avon's compensation package.

80. On information and belief, the premium that Avon intends to pay Plotkin is representative of the access Avon will gain to Gentex's proprietary information and trade secrets when Plotkin begins his employment.

81. This is not the first time Avon has engaged in anti-competitive conduct violative of Gentex's rights. In 2018, when Avon's business was focused solely on respiratory products and Gentex's respiratory business (correlated with CBRN) was less developed, Avon proposed entering into a distributorship arrangement for Gentex's Helmet Systems business, where the two

companies had little direct competition at the time. Avon signed a NDA with Gentex in 2018 pursuant to which Avon obtained access to sensitive commercial data related to Gentex's Helmet Systems business, including its price list. It was after entering into the NDA that Avon acquired Ceradyne, which it announced in August 2019. To this day, Avon has never returned Gentex's price list or other confidential information, and has ignored Gentex's demands in that regard.

82.     Plotkin's role at Avon will involve preparing responses to RFPs and executing on captured programs and orders. More fundamentally, Plotkin will be charged with creating and implementing for Avon a "program management office"—a function that Avon does not currently have—modeled on the program management office that Plotkin developed and managed at Gentex for years.

83.     In developing Avon's program management office and responses to RFPs, Plotkin will not be able to refrain from drawing on his knowledge of Gentex's products, personnel capabilities, cost structure, pricing limitations, and strategic plans. As an officer and member of senior management at Avon, Plotkin necessarily will be called upon to contribute to Avon's own development and competition plans for military production and development contracts—the precise areas in which he is most knowledgeable about Gentex's ongoing efforts.

84.     It would be impossible for Plotkin to discharge his services for Avon without using his knowledge of Gentex's proprietary and confidential information—in many cases developed with respect to the exact RFPs on which he will be working—to create responses on behalf of Avon and shape Avon's proposals.

85.     On August 19, 2020, Gentex sent a cease-and-desist letter (the "Letter") to Avon that included a copy of the Contract.

86.     The Letter demanded that Avon refrain from employing Plotkin or taking any

Case 1:20-cv-02637-ELH   Document 1   Filed 09/14/20   Page 18 of 29

action in contravention of Gentex's rights under the Contract without first taking steps to acknowledge and protect Gentex's legitimate interests in its own proprietary and confidential information.

87.     The Letter also requested that Avon cooperate with Gentex in its efforts to recover and protect any proprietary and confidential information that may have already been disclosed.

88.     Avon agreed to postpone Plotkin's start date for a short period to enable the parties to discuss available measures to protect Gentex's proprietary and confidential information.  As of the date of this filing, Avon has not agreed to postpone Plotkin's start date beyond September 17, 2020.

**E.        Plotkin Removed Proprietary Information from Gentex**

89.     Upon notice of Plotkin's intended departure, Gentex requested that Plotkin return his company-issued laptop and any other media containing Gentex information.  Plotkin returned his laptop, but identified no other company data in his possession.

90.     On forensic review, Gentex learned that on multiple discrete occasions during the period of his discussions with Avon (from February 2020 through August 2020), Plotkin connected thumb drives or other portable media to his laptop and downloaded Gentex files without notice to the company.  Gentex has identified at least four unique drives that at various times were connected to Plotkin's laptop.

91.     Plotkin initially denied having copied any Gentex information, and then disclaimed any intent to retain it.

92.     Upon demand, Plotkin produced two thumb drives for inspection by Gentex. Plotkin disclaimed any knowledge of additional media, but speculated that one of the others may have been a personal cell phone backup.

93. The two thumb drives reflect downloads of several hundred documents. Many of the files Plotkin transferred were Gentex-specific proprietary documents, and several are highly sensitive and specific to Gentex's policies, procedures, and financial data, uniquely tailored to Gentex's strategy and execution approach to program management—directly relevant to the role Plotkin intends to fill at Avon.

94. The January 2020 strategy document referenced above (supra ¶ 58) had been copied to one of the drives, but Plotkin deleted that file before producing the drives to Gentex for inspection. Gentex has been able to trace the deletion of the file and confirm that it previously had been saved to that thumb drive.

95. Plotkin has since suggested that Gentex simply delete the files from the two thumb drives he returned to Gentex, implying that their deletion would prevent disclosure.

96. However, without any further forensic inspection of Plotkin's home or personal devices, Gentex is unable to determine whether these (or other) files were transferred elsewhere.

97. Avon claims to rely on Plotkin's assurances that the files Plotkin removed from his work computer were not Gentex's confidential and proprietary information, but rather templates containing little to no proprietary information.

98. Avon further claims to rely on Plotkin's representations that any files that contain Gentex's information would not be disclosed to Avon, but that if they were disclosed, the information would not impact the competitive position between Avon and Gentex.

99. As a result, Avon asserts that while Plotkin's employment with Avon conflicts with the express terms of the Contract, Gentex should be comfortable relying on Plotkin's assurances that no competitive or sensitive information will be at risk in his new role creating and supporting a program management function for Avon in competition with Gentex.

100.    On September 9, 2020, Avon disclosed that it has agreed to acquire Team Wendy in a deal valued at $130 million.  *See* Team Wendy acquisition announcement attached hereto as Exhibit E.  With this acquisition, Avon demonstrates an intent to expand, not limit, its direct competition with Gentex in the Integrated Helmet Systems segment—which bridges CBRN and ballistics—and beyond.  Acquiring Plotkin advances Avon's competitive strategy, in direct contravention of Plotkin's Contract with Gentex.

## COUNT I – BREACH OF CONTRACT
*(against Neil Plotkin)*

101.    Gentex incorporates paragraphs 1 through 100 as if fully set forth herein.

102.    On September 22, 2014, Gentex and Plotkin entered into the Employee's Agreement for the Protection of Proprietary Information and the Assignment of Inventions (the "Contract").

103.    The Contract contained a Restrictive Covenant preventing Plotkin from obtaining employment with Gentex's competitors unless Gentex previously agreed to that arrangement in writing.

104.    The Contract also contained an NDA preventing Plotkin from disclosing Gentex's proprietary and confidential information unless it became public domain, was known by Plotkin prior to his employment with Gentex, or was rightfully received from a third party who is not under a duty to the Gentex not to disclose such information.

105.    Plaintiff has performed all conditions, covenants, and promises required on its part to be performed in connection with the terms and conditions of the Contract.

106.    Avon is a direct competitor of Gentex.

107.    Gentex did not agree to Plotkin's employment with Avon in writing.

108.    Plotkin breached the Restrictive Covenant when he accepted employment with

Avon without Gentex's agreement in writing.

109. On information and belief, Plotkin has disclosed proprietary and confidential information to Avon.

110. Gentex's proprietary and confidential information is not part of the public domain, was not known by Plotkin prior to his employment with Gentex, and was not rightfully received by Avon from a third party who is not under a duty to the Gentex not to disclose such information.

111. Plotkin breached the NDA when he disclosed proprietary and confidential information to Avon.

112. As a direct and proximate result of Plotkin's breach of the Contract, Plaintiff has been damaged by the release of proprietary and confidential information that, in the hands of a competitor like Avon, could result in millions of dollars of losses to Gentex.

### COUNT II – MISAPPROPRIATION OF TRADE SECRETS
*(against all defendants)*

113. Gentex incorporates paragraphs 1 through 112 as if fully set forth herein.

114. On September 22, 2014, Gentex and Plotkin entered into the Employee's Agreement for the Protection of Proprietary Information and the Assignment of Inventions (the "Contract").

115. Under the NDA, Plotkin acknowledged and agreed to protect the secrecy of Gentex's proprietary and confidential information.

116. During Plotkin's employment with Gentex, he had access to proprietary and confidential information, including but not limited to technical data, layouts, machines, processes, designs, products, concepts, equipment, special tools, work in process, business strategies, and financial information—some of which he transferred to external drives that he stored at home.

117. Since Plotkin's separation from Gentex, Plotkin has had Gentex's proprietary and

confidential information in his possession on the external drives stored at his home.

118.    Under Section IV of the Contract, Plotkin acknowledged and agreed that Gentex's "business is built upon the [Gentex's] proprietary information and the confidence of its customers and that all goodwill arising out of [Plotkin's] acquaintances with customers shall be the sole and exclusive property of [Gentex]."

119.    Plotkin also agreed and acknowledged that Gentex "would suffer irreparable injury if [Plotkin] solicit[s] representatives, contractors, employees, suppliers or consultants of the [Gentex], divert business from the [Gentex], or solicit[s] or accept[s] business from clients, customers, or vendors of [Gentex]."

120.    On August 20, 2020, Avon acknowledged that it had received a copy of the Contract.

121.    Defendants are aware that, through the Contract, Gentex asserts its rights to its proprietary and confidential information because its disclosure would cause irreparable injury to Gentex's business.

122.    Knowing a competitor's proprietary and confidential information, including but not limited to costs, design deficiencies, production timelines would provide competitive advantage in bidding for contracts for CBRN PPE and integrated helmet systems.

123.    Avon is a direct competitor of Gentex.

124.    Avon acted willfully in pursuing Plotkin's employment.

125.    Plotkin accepted employment with Avon.

126.    Plotkin has acknowledged that that the release of Gentex's confidential and proprietary information will benefit Avon and cause irreparable harm to Gentex.

127.    On information and belief, Plotkin has revealed, and Avon has received, proprietary

and confidential information in contravention of the Contract.

128.    As a direct and proximate result of Defendants' actions, Plaintiff has been damaged by the misappropriation of proprietary and confidential information that, in the hands of a competitor like Avon, could result in millions of dollars of losses to Gentex.

129.    Gentex is entitled to punitive damages as a result of Defendants' willful conduct.

**COUNT III – UNFAIR COMPETITION**
*(against all Defendants)*

130.    Gentex incorporates paragraphs 1 through 129 as if fully set forth herein.

131.    On September 22, 2014, Gentex and Plotkin entered into the Employee's Agreement for the Protection of Proprietary Information and the Assignment of Inventions (the "Contract").

132.    On August 20, 2020, Avon acknowledged that it had received a copy of the Contract.

133.    The Contract contained a Restrictive Covenant that prevented Plotkin from accepting employment with Avon within twelve months of cessation of his employment with Gentex.

134.    Plotkin resigned from Gentex effective August 30, 2020.

135.    On information and belief, Plotkin will begin employment with Avon on September 17, 2020.

136.    Plotkin violated the Restrictive Covenant when he accepted employment with Avon.

137.    Under the NDA, Plotkin agreed to protect Gentex's proprietary and confidential information.

138.    On information and belief, Plotkin has shared, and Avon has received Gentex's

proprietary and confidential information, including but not limited to trade secrets.

139.   Avon denies the existence of a conflict between Plotkin's role at Gentex and his anticipated responsibilities at Avon.  Notwithstanding some initial overtures, Avon has thus refused to cooperate in Gentex's attempt to recover or protect any proprietary and confidential information that may have already been shared and obtain reasonable assurances to protect against any further disclosure.

140.   Avon has previously refused to return Gentex's proprietary information in its possession since 2018.

141.   Avon also has previously attempted to recruit a Gentex employee to fill an operations role to gain a competitive advantage over Gentex in violation of that employee's NDA.

142.   Plotkin's disclosure of, and Avon's receipt and refusal to protect, Gentex's trade secrets constitutes a misappropriation of trade secrets.

143.   As a direct and proximate result of Defendants' actions, Plaintiff has been damaged by the release of proprietary and confidential information that, in the hands of a competitor like Avon, could result in millions of dollars of losses to Gentex.

## COUNT IV – TORTIOUS INTERFERENCE
*(against Avon)*

144.   Gentex incorporates paragraphs 1 through 143 as if fully set forth herein.

145.   On September 22, 2014, Gentex and Plotkin entered into the Employee's Agreement for the Protection of Proprietary Information and the Assignment of Inventions (the "Contract").

146.   On August 20, 2020, Avon acknowledged that it had received the Letter sent to it by Gentex that included a copy of the Contract.

147.   In the Letter, Gentex requested that Avon cooperate in preventing Plotkin from

violating the Contract by refraining from employing Plotkin, or otherwise taking any action in contravention of Gentex's rights and protection under the Contract.

148. In the Letter, Gentex also requested that Avon cooperate in Gentex's attempt to recover or protect any proprietary and confidential information that may have already been shared and obtain reasonable assurances to protect against any further disclosure.

149. Avon acted improperly when it refused to cooperate with Gentex's request, and intends to employ Plotkin beginning September 17, 2020.

150. On information and belief, Plotkin has shared, and Avon has received, Gentex's proprietary and confidential information with Avon.

151. As a direct and proximate result of Plotkin's employment with Avon, and Avon's refusal to cooperate with Gentex's demands, Gentex has been injured by the release of proprietary and confidential information that, in the hands of a competitor like Avon, could result in millions of dollars of losses to Gentex.

## COUNT V – DECLARATORY JUDGMENT
*(against all defendants)*

152. Gentex incorporates paragraphs 1 through 151 as if fully set forth herein.

153. On September 22, 2014, Gentex and Plotkin entered into the Employee's Agreement for the Protection of Proprietary Information and the Assignment of Inventions (the "Contract").

154. Under the NDA, Plotkin agreed to protect Gentex's proprietary and confidential information.

155. Under Section IV of the Contract, Plotkin agreed and acknowledged that Gentex's "business is built upon the [Gentex's] proprietary information and the confidence of its customers and that all goodwill arising out of [Plotkin's] acquaintances with customers shall be the sole and

exclusive property of [Gentex]."

156.    Plotkin also agreed and acknowledged that Gentex "would suffer irreparable injury if [Plotkin] solicit[s] representatives, contractors, employees, suppliers or consultants of the [Gentex], divert business from the [Gentex], or solicit[s] or accept[s] business from clients, customers, or vendors of [Gentex]."

157.    Gentex is entitled to the protection and secrecy of its proprietary and confidential information, including but not limited to its technical data, layouts, machines, processes, designs, products, concepts, equipment, special tools, works in process, business strategies, financial information technical data, layouts, machines, processes, designs, products, concepts, equipment, special tools, work in process, business strategies, financial information, customer lists, contractor lists, and vendor lists.

158.    Plotkin and Avon deny that Gentex is entitled to protect this confidential and proprietary information by enforcing the non-compete provisions of its employment contract with Plotkin.

159.    An actual controversy has arisen and now exists between Gentex on one hand, and Avon and Plotkin on the other, concerning their respective rights, obligations, and duties to Gentex's proprietary and confidential information.

160.    Gentex seeks a judicial determination of the Parties respective rights and duties, and a declaration that Gentex is entitled to the protection and secrecy of its proprietary and confidential information.

161.    A judicial determination is necessary and appropriate at this time.

## RELIEF REQUESTED

WHEREFORE, Gentex requests that this Court:

A.      Enter judgment for Gentex for all counts of this complaint;

B.      Enter a preliminary injunction, pending a decision on the merits that enjoins Plotkin from employment with Avon;

C.      Upon hearing the merits, enjoin Plotkin from employment with Avon until August 31, 2021;

D.      Upon hearing the merits, enjoin Plotkin from ever disclosing Gentex's proprietary and confidential information;

E.      Upon hearing the merits, enjoin Avon from misappropriating Gentex's proprietary and confidential information;

F.      Enter a declaratory judgment that Gentex is entitled to the protection and secrecy of its proprietary and confidential information;

G.      Award Gentex punitive damages, its litigation costs and reasonable attorney's fees; and

H.      Order such other relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 14, 2020                    MORGAN, LEWIS & BOCKIUS LLP


                                             By:   /s/ Jason R. Scherr
                                                   Jason R. Scherr, Bar No. 9812170109
                                                   jr.scherr@morganlewis.com

                                             1111 Pennsylvania Avenue, NW
                                             Washington, DC  20004
                                             Telephone:   +1.202.739.3000
                                             Facsimile:    +1.202.739.3001

                                             Attorneys for Plaintiff

- 28 -

## VERIFICATION

I, Chandra Sankar, on behalf of Gentex, verify under penalty of perjury that I have read the above Verified Complaint for Injunctive and Other Relief and its contents, that the documents attached as exhibits hereto are authentic, and that the matters stated herein are true and correct to the best of my knowledge and recollection.

Executed this 13TH day of September 2020.

_Chandra Sankar_
Chandra Sankar